

PCM3.21.22
AM USAO#2021R00612

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | <u>UNDER SEAL</u> |
| v. | * | |
| | * | **CRIMINAL NO. DLB-22-038** |
| TYJAE BLADEN, | * | |
| BRIAN BROWNELL, | * | **(Conspiracy, 18 U.S.C. § 371;** |
| aka "Cole" | * | **Engaging in the Business of Dealing in** |
| MAURICE DACOSTA, | * | **Firearms Without a License, 18 U.S.C.** |
| aka "Jr," and | * | **§ 922(a)(1)(A); Aiding and Abetting,** |
| CAMERON TAYLOR, | * | **18 U.S.C. § 2; Unlawful Possession of** |
| aka "Chino," | * | **Machinegun, 18 U.S.C. § 922(o);** |
| | * | **Forfeiture, 18 U.S.C. § 924(d), 28** |
| Defendants | * | **U.S.C. § 2461(c), and 26 U.S.C. § 5872)** |

\*\*\*\*\*\*\*

### SUPERSEDING INDICTMENT

### COUNT ONE
**(Conspiracy to Engage in the Business of Dealing in Firearms Without a License)**

The Grand Jury for the District of Maryland charges that:

### Introduction

1.      At all times relevant to this Indictment, neither defendants CAMERON TAYLOR, aka "Chino," TYJAE BLADEN, MAURICE DACOSTA, aka "Jr." nor BRIAN BROWNELL, aka "Cole," had a federal firearms license issued by the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives, and thus no participant was licensed to transport, manufacture, or deal in firearms.

2.      Beginning on a date unknown to the Grand Jury, and continuing until on or about January 4, 2022, TAYLOR, BLADEN, and DACOSTA lived, at least in part, at the Kings Ridge Apartments in Baltimore County. TAYLOR lived in an apartment in close proximity to an apartment that BLADEN and DACOSTA shared. DACOSTA also resided, in part, at a residence in Baltimore City.

3.     A privately-made firearm, sometimes referred to as a "PMF," is an unregistered firearm that lacks any identifiable markings.

4.     A PMF can be created by purchasing a do-it-yourself kit, sometimes referred to as a build-buy-shoot kit, which contains all of the individual parts needed to create a gun in a partially drilled state, commonly referred to as an unfinished receiver or an "80%" receiver.

5.     Polymer80 is a company that manufactures the do-it-yourself kits, described in paragraph 4, as well as pistol and frame assemblies.

6.     A machinegun conversion device, sometimes referred to as a "switch," is designed and intended for use in converting a semiautomatic Glock pistol to fire automatically.

7.     Firearms and machinegun conversion devices may also be built by using a 3D printer to create the firearm and machinegun conversion device's component parts.

## Object of the Conspiracy

8.     Beginning on a date unknown to the Grand Jury, and continuing until on or about January 4, 2022, within the District of Maryland, defendants

**TYJAE BLADEN,
BRIAN BROWNELL,
aka "Cole"
MAURICE DACOSTA,
aka "Jr," and
CAMERON TAYLOR,
aka "Chino,"**

and others known and unknown to the Grand Jury, did knowingly and unlawfully combine, conspire, agree, and confederate with each other to commit offenses against the United States, that is, to knowingly and willfully engage in the business of dealing firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A).

2

## Manner and Means of the Conspiracy

9.     DACOSTA was associated with TAYLOR, BLADEN, and BROWNELL, and worked with them to sell firearms for a profit. DACOSTA additionally worked with TAYLOR and BLADEN to sell machinegun conversion devices for a profit.

10.    DACOSTA, TAYLOR, BROWNELL and BLADEN would acquire firearms parts to be built into firearms to sell for a profit. DACOSTA, TAYLOR and BLADEN additionally acquired do-it-yourself kits to be built into firearms and machinegun conversion devices to sell for a profit.

11.    TAYLOR, DACOSTA, BLADEN, and BROWNELL would arrange to sell firearms to customers and sell the firearms to customers.

## Overt Acts

12.    In furtherance of the conspiracy and to achieve the objective thereof, the defendants and others performed and caused to be performed the following overt acts, among others, in the District of Maryland:

13.    Between on or about August 4, 2021, and September 29, 2021, DACOSTA and TAYLOR discussed selling firearms, pricing for firearms sales, 3D printers, and machinegun conversion devices.

14.    On or about September 2, 2021, DACOSTA asked BLADEN to order a firing pin from 3crtactical.com for him. 3crtactical.com is a website for the business 3CR Tactical, which is a retail company that sells, among other things, firearm do-it-yourself kits and pieces, tools, and accessories for assault rifles and Glock-style firearms.

15.    Between on or about September 26, 2021, and October 4, 2021, DACOSTA and BROWNELL discussed DACOSTA arranging firearms sales for BROWNELL and BROWNELL

3

sharing profits from these sales with DACOSTA and/or building DACOSTA a firearm at no cost in exchange for the sale referrals.

16.     On or about October 4, 2021, DACOSTA sold a Rohm RG24 .22 Long Rifle caliber revolver bearing serial number 145248 loaded with thirteen rounds of Winchester ammunition, a Polymer80 9mm luger pistol bearing no serial number, and a Polymer80 9mm luger pistol bearing no serial number with a magazine to two persons he believed were firearms customers, but who were, in fact, a confidential source and undercover officer ("UC"), in exchange for $3,300.

17.     On or about October 8, 2021, DACOSTA sold a Polymer80 9mm luger pistol bearing no serial number with a magazine to the UC in exchange for $1,060. Also during this purchase, DACOSTA said that he was about to get "switches" and provided the UC with a number to contact "Cole" (BROWNELL) for an AR-style firearm.

18.     Between on or about October 9 and 19, 2021, BROWNELL communicated with the UC regarding selling him an AR-style rifle.

19.     On or about October 9, 2021, BROWNELL told the UC that he was willing to "push these big boy bippies," but that he wanted to make sure that they worked because he "just started doing this not long ago" and it is "just good business."

20.     On or about October 12, 2021, DACOSTA and TAYLOR discussed using a 3D printer to create switches. TAYLOR also told DACOSTA that he was going to "start posting and promoting" the switches, "like yeah $1200 for a switch." DACOSTA responded "bet dat n ima post 1300-1500."

21.     On or about October 14, 2021, DACOSTA sold a Century Arms International, RAS47, 7.62x39mm caliber pistol bearing serial number RAS47093984, a Polymer80 9mm luger pistol bearing no serial number, and a magazine to the UC for $5,000. DACOSTA was driven to

4

and from the sale by BLADEN.

22.     On or about October 14, 2021, BROWNELL told DACOSTA that he "got building em [firearms] down pat, so now when I get back we gonna start ordering and selling." BROWNELL also told DACOSTA that although the UC was reaching out to him directly, "don't worry, you're my partna in this and I'll def cut you in."

23.     On or about October 19, 2021, DACOSTA sold a Taurus PT809C 9mm luger pistol SN TEU03071, two Polymer80 9mm luger pistols bearing no serial number, and a magazine to the UC in exchange for $2,900.

24.     On or about October 19, 2021, BROWNELL sold an AR-15 (06R), 5.56mm rifle bearing no serial number to the UC in exchange for $1,500.

25.     On or about October 20, 2021, DACOSTA and TAYLOR discussed 3-D printing switches, both indicating that they had customers ready to purchase the switches.

26.     On or about October 22, 2021, BROWNELL sold an AR-15 (06R), 5.56mm rifle bearing no serial number to the UC in exchange for $1,500.

27.     On or about October 23, 2021, DACOSTA told BLADEN that "Chino" was on the way to drop off a car. DACOSTA also told BLADEN that he would be telling "Chino" to give BLADEN the printer, and that "Chino" would be giving BLADEN a gun. At first, BLADEN responded that "Chino" only brought over the keys. Approximately fourteen minutes later, BLADEN told DACOSTA "he brought it."

28.     On or about October 27, 2021, DACOSTA sold two Polymer80 9mm luger pistols bearing no serial number to the UC in exchange for $2,400. During this sale, DACOSTA explained to the UC that he planned to charge $1,500 for a switch.

29.     On or about October 28, 2021, BROWNELL sold two AR-15 (06R), 5.56mm rifles

bearing no serial number to the UC in exchange for $3,000.

30.     On or about October 29, 2021, DACOSTA sold a Hi-Point 995 9mm luger pistol SN E15743 to the UC in exchange for $440.

31.     On or about November 1, 2021, DACOSTA asked BROWNELL if he had an extra magazine. BROWNELL responded that he did, and that he had "an under the table thing going on with [his] suppliers."

32.     On or about November 5, 2021, DACOSTA sold three Polymer80 9mm luger pistols bearing no serial number and two magazines, one of which was 3D printed, to the UC for $3,600. BLADEN drove DACOSTA to and from the sale. When DACOSTA got into the UC's vehicle to complete the sale, DACOSTA told the UC that one of the firearms was BLADEN's.

33.     On or about November 9, 2021, DACOSTA was arrested in Baltimore County, Maryland.

34.     Between on or about November 13 and 21, 2021, DACOSTA called BLADEN and instructed her to continue selling firearms to the UC.

35.     On or about November 22, 2021, BLADEN met with the UC to sell him a firearm. However, the firearm that BLADEN brought to sell did not work. When the UC asked BLADEN about the switches, BLADEN said that another individual had the switch and it would be available by 2:00 p.m.

36.     Between on or about November 23, 2021, and December 7, 2021, BLADEN and DACOSTA continued to discuss firearms sales and another individual picking up a 3D printer from DACOSTA's residence.

37.     On or about December 9, 2021, BLADEN texted the UC that "[h]e said can u come get them tomorrow . . . [t]he switches . . . [h]e said he got all 3." BLADEN and the UC then planned

to meet on December 13, 2021 so that BLADEN could sell the UC "3 switches and the poll" (firearm) for $6,500.

38.     On or about December 13, 2021, TAYLOR sold the UC one 9x19mm caliber black Glock-type pistol bearing no serial number, a magazine, a machinegun conversion device, and three additional suspected machinegun conversion devices, all of which were 3D printed, for $6,800. BLADEN drove TAYLOR to and from the sale. During the sale, TAYLOR told the UC that he had already sold ten switches.

39.     On or about December 22, 2021, TAYLOR sold the UC one 9x19mm caliber black Glock-type pistol bearing no serial number that was 3D printed, a Polymer80 9mm luger pistol bearing no serial number, two magazines, one of which was 3D printed, one machinegun conversion device, and two suspected machinegun conversion devices for $8,000.

40.     Prior to the sale discussed in Paragraph 39, BLADEN and TAYLOR went to Baltimore Custom Guns located at 7542 Holabird Avenue, Dundalk, Maryland 21222, entered the store, and purchased a Magpul PMAG 21 Rebuild Kit (a fully dissembled magazine kit that can be used, for example, to replace broken parts in an old magazine) and a Federal Premium LE 9mm +P Tactical HST (ammunition). BLADEN then drove TAYLOR to the sale with the UC and, after the sale, back to the Kings Ridge Apartments.

41.     On or about January 4, 2022, TAYLOR sold the UC two 9x19mm caliber black Glock-type pistols bearing no serial number, both of which were 3-D printed, two magazines, thirteen rounds of 9mm Lugar ammunition, and three suspected machinegun conversion devices for $8,350. During the sale, TAYLOR told the UC that he knew someone with 100 switches that wanted him to buy 40-50 of them.

42.     On January 21, 2022, investigators recovered a 3D printer, four machinegun

conversion devices, and sixteen suspected machinegun conversion devices from TAYLOR's residence; a 3D printer and a Polymer80 9mm luger pistol bearing no serial number from DACOSTA's residence in Baltimore City; and a 3D printer from DACOSTA and BLADEN's residence in Baltimore County.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH SIX
### (Engaging in the Business of Dealing in Firearms Without a License)

The Grand Jury for the District of Maryland charges that:

1.     Paragraphs 1 through 7 and 9 through 11 and the Overt Acts of Count One are incorporated here.

2.     On or about the dates set forth below, in the District of Maryland, the defendant,

### MAURICE DACOSTA,
#### aka "Jr,"

not being a licensed dealer, importer, or manufacturer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing and manufacturing firearms, in violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D):

| Count | Date |
|:-----:|:----:|
| 2 | 10/4/2021 |
| 3 | 10/8/2021 |
| 4 | 10/19/2021 |
| 5 | 10/27/2021 |
| 6 | 10/29/2021 |

18 U.S.C. § 922(a)(1)(A)
18 U.S.C. § 923(a)
18 U.S.C. § 924(a)(1)(D)
18 U.S.C. § 2

## COUNTS SEVEN AND EIGHT
### (Engaging in the Business of Dealing in Firearms Without a License)

The Grand Jury for the District of Maryland charges that:

1.     Paragraphs 1 through 7 and 9 through 11 and the Overt Acts of Count One are incorporated here.

2.     On or about the dates set forth below, in the District of Maryland, the defendants,

**MAURICE DACOSTA,**
**aka "Jr," and**
**TYJAE BLADEN,**

not being a licensed dealer, importer, or manufacturer of firearms within the meaning of Chapter 44, Title 18, United States Code, each aiding and abetting the other, did willfully engage in the business of dealing and manufacturing firearms, in violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D):

| Count | Date |
|-------|------------|
| 7 | 10/14/2021 |
| 8 | 11/5/21 |

18 U.S.C. § 922(a)(1)(A)
18 U.S.C. § 923(a)
18 U.S.C. § 924(a)(1)(D)
18 U.S.C. § 2

## COUNTS NINE THROUGH ELEVEN
### (Engaging in the Business of Dealing in Firearms Without a License)

The Grand Jury for the District of Maryland charges that:

1.        Paragraphs 1 through 7 and 9 through 11 and the Overt Acts of Count One are incorporated here.

2.        On or about the dates set forth below, in the District of Maryland, the defendant,

### BRIAN BROWNELL,
### aka "Cole,"

not being a licensed dealer, importer, or manufacturer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing and manufacturing firearms, in violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D):

| Count | Date |
|-------|------------|
| 9     | 10/19/2021 |
| 10    | 10/22/2021 |
| 11    | 10/28/21   |

18 U.S.C. § 922(a)(1)(A)
18 U.S.C. § 923(a)
18 U.S.C. § 924(a)(1)(D)
18 U.S.C. § 2

11

## COUNTS TWELVE AND THIRTEEN
### (Engaging in the Business of Dealing in Firearms Without a License)

The Grand Jury for the District of Maryland charges that:

1.      Paragraphs 1 through 7 and 9 through 11 and the Overt Acts of Count One are

incorporated here.

2.      On or about the dates set forth below, in the District of Maryland, the defendants,

### CAMERON TAYLOR,
### aka "Chino," and
### TYJAE BLADEN,

not being a licensed dealer, importer, or manufacturer of firearms within the meaning of Chapter

44, Title 18, United States Code, each aiding and abetting the other, did willfully engage in the

business of dealing and manufacturing firearms, in violation of Title 18, United States Code,

Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D):

| Count | Date |
|---|---|
| 12 | 12/13/2021 |
| 13 | 12/22/2021 |

18 U.S.C. § 922(a)(1)(A)
18 U.S.C. § 923(a)
18 U.S.C. § 924(a)(1)(D)
18 U.S.C. § 2

12

## COUNT FOURTEEN
### (Engaging in the Business of Dealing in Firearms Without a License)

The Grand Jury for the District of Maryland charges that:

1.　　　Paragraphs 1 through 7 and 9 through 11 and the Overt Acts of Count One are incorporated here.

2.　　　On or about the dates set forth below, in the District of Maryland, the defendant,

### CAMERON TAYLOR,
### aka "Chino,"

not being a licensed dealer, importer, or manufacturer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing and manufacturing firearms, in violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D):

| Count | Date |
|-------|----------|
| 14 | 1/4/2022 |

18 U.S.C. § 922(a)(1)(A)
18 U.S.C. § 923(a)
18 U.S.C. § 924(a)(1)(D)
18 U.S.C. § 2

## COUNT FIFTEEN
### (Unlawful Possession of a Machinegun)

The Grand Jury for the District of Maryland charges that:

On or about December 13, 2021, in the District of Maryland, the defendants,

### CAMERON TAYLOR and
### TYJAE BLADEN,

did knowingly possess a machinegun, as that term is defined in 26 U.S.C. § 5845(b); that is, a 9x19mm caliber black Glock-type pistol bearing no serial number, with a black machinegun conversion device attached, in violation of Title 18, United States Code, Section 922(o) and 924(a)(2).

18 U.S.C. § 922(o)
26 U.S.C. § 5845(b)
18 U.S.C. § 924(a)(2)
18 U.S.C. § 2

## COUNT SIXTEEN
### (Unlawful Possession of a Machinegun)

The Grand Jury for the District of Maryland charges that:

On or about December 22, 2021, in the District of Maryland, the defendants,

## CAMERON TAYLOR and
## TYJAE BLADEN,

did knowingly possess a machinegun, as that term is defined in 26 U.S.C. § 5845(b); that is, a

9x19mm caliber black Glock-type pistol bearing no serial number, with a black machinegun

conversion device attached, in violation of Title 18, United States Code, Section 922(o) and

924(a)(2).

18 U.S.C. § 922(o)
26 U.S.C. § 5845(b)
18 U.S.C. § 924(a)(2)
18 U.S.C. § 2

15

## COUNT SEVENTEEN
### (Unlawful Possession of Machineguns)

The Grand Jury for the District of Maryland charges that:

On or about January 21, 2022, in the District of Maryland, the defendant

## CAMERON TAYLOR,
### aka "Chino,"

did knowingly possess four machineguns, as that term is defined in 26 U.S.C. § 5845(b); that is,

four machinegun conversion devices, in violation of Title 18, United States Code, Section 922(o)

and 924(a)(2).

18 U.S.C. § 922(o)
26 U.S.C. § 5845(b)
18 U.S.C. § 924(a)(2)

**FORFEITURE**

The Grand Jury for the District of Maryland further finds that:

1.     All allegations set forth in Counts One through Seventeen are hereby incorporated by reference.

2.     Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 28 U.S.C. § 2461(c) and the other statutes cited herein, in the event of the defendants' convictions.

**Firearms and Ammunition Forfeiture**

3.     Pursuant to 18 U.S.C. § 924(d) and 26 U.S.C. § 5872, upon conviction of the offenses alleged in Counts One through Seventeen of this Indictment, the defendant(s) convicted of such offense(s) shall forfeit to the United States any firearms and ammunition involved in the offense(s).

**Property Subject to Forfeiture**

4.     The property to be forfeited includes, but is not limited to, the following:

   a.  Two 9x19mm caliber black Glock-type pistols bearing no serial number;

   b.  Two black auto switch conversion devices.

   c.  a Rohm RG24 .22 Long Rifle caliber revolver bearing serial number 145248;

   d.  thirteen rounds of Winchester ammunition;

   e.  a Polymer80 9mm luger pistol bearing no serial number;

   f.  a Polymer80 9mm luger pistol bearing no serial number;

   g.  a Polymer80 9mm luger pistol bearing no serial number;

   h.   a Century Arms International, RAS47, 7.62x39mm caliber pistol bearing serial number RAS47093984;

i.   a Polymer80 9mm luger pistol bearing no serial number;

j.   a Taurus PT809C 9mm luger pistol SN TEU03071;

k.   two Polymer80 9mm luger pistols bearing no serial number;

l.   an AR-15 (06R), 5.56mm rifle bearing no serial number;

m.  an AR-15 (06R), 5.56mm rifle bearing no serial number;

n.   two Polymer80 9mm luger pistols bearing no serial number;

o.   two AR-15 (06R), 5.56mm rifles bearing no serial number;

p.   a Hi-Point 995 9mm luger pistol bearing serial number E15743;

q.   three Polymer80 9mm luger pistols bearing no serial number;

r.   One 9x19mm caliber black Glock-type pistol bearing no serial number;

s.   four machinegun conversion devices;

t.   One 9x19mm caliber black Glock-type pistol bearing no serial number;

u.   a Polymer80 9mm luger pistol bearing no serial number;

v.   three machinegun conversion devices;

w.  Two 9x19mm caliber black Glock-type pistols bearing no serial number;

x.   thirteen rounds of 9mm Lugar ammunition;

y.   a Polymer80 9mm luger pistol bearing no serial number; and

z.   four machinegun conversion devices.


18 U.S.C. § 924(d)
28 U.S.C. § 2461(c)
26 U.S.C. § 5872

_Erek L. Barron / arm_

Erek L. Barron
Acting United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

3/22/2022

Date

19